## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID MURRAY** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:10-CV-797** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **CITY OF COLUMBUS, et al.,** | : | **Magistrate Judge Mark R. Abel** |
| | : | |
| **Defendants.** | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on a motion to dismiss pursuant to Federal Rule Civil

Procedure ("FRCP") 12(b)(6) filed by Defendants City of Columbus ("the City") and Mitchell

Brown, (Doc. 35), and a second motion to dismiss pursuant to FRCP 12(b)(1) & (6) filed by

Defendants Fraternal Order of Police, Capital City Lodge # 9 ("the FOP"), and James Gilbert,

president of Capital City Lodge #9, (Doc. 36).  For the following reasons, both motions to

dismiss are **GRANTED** and this action is hereby **DISMISSED**.

### II. BACKGROUND

#### A. Factual History

Plaintiff David Murray ("Plaintiff" or "Murray") was employed by the City for more than

29 years.  Prior to his termination, he served as a Lieutenant of the Police within the Division of

Police, earning approximately $90,000 per year in salary plus additional paid and unpaid

benefits.  Murray alleges that his disciplinary records were positive before he was fired.  He was

a bargaining unit member of the FOP.  The City and the FOP entered into a collective bargaining agreement ("CBA"), which contains disciplinary and grievance procedures.[1]  (Doc. 27-1.)

Defendant Brown is employed by the City as the Director of Public Safety.  On September 18, 2007, Brown filed a complaint "as a civilian" with Murray's supervisor alleging that Murray had "improperly disclosed information from the Internal Affairs Bureau to the media."  (Am. Compl. ¶ 12.)  Brown's complaint was governed by a 90-day limitation on investigations contained in the CBA § 8.14, but the investigation allegedly continued past the 90-day limit and concluded on January 11, 2008.  Murray alleges that Brown, acting in his official capacity, ordered the investigation to continue past the 90-day limit.

Upon conclusion of the investigation, Brown held a pre-termination hearing for Murray.  Murray was, nevertheless, terminated on September 4, 2008, and timely grieved the termination under the CBA.  Murray alleges that from September 4, 2008 until September 3, 2010 the City, the FOP, and Defendants John Does conducted negotiations to resolve his grievance.  An arbitration has not taken place to date.

The parties disagree about when a settlement agreement was reached.  Defendants assert the City and the FOP entered into a settlement agreement on July 2010, although the settlement agreement had not been executed.  (Doc. 20.)  Murray contends, however, that the first he learned of any settlement agreement was on June 23, 2011.  (*Id.*)  Then, on a September 23, 2011 call, the City's counsel informed Murray that, "[t]he settlement agreement is now in the hands of the FOP for their review."  (Am. Compl. ¶ 32.)  Murray received a copy of the settlement agreement during a telephonic conference with the Court on September 29, 2011.  On October 3, 2011, pursuant to the terms of the settlement agreement, Murray resigned in good standing.

---

[1] Step four of the grievance procedure in the CBA explains the Director of Public Safety's role, (CBA § 12.5(D)) and step five explains the arbitration procedures, (CBA § 12.5(E)).  (Doc. 27-1at 12–13.)

*B. Procedural History*

Murray's initial complaint was filed against the City and Brown on September 3, 2010. (Doc. 2.)  He explains that he filed the complaint because an arbitration date had not yet been set, and he needed to preserve his due process claims because September 3, 2010 was the last day of the statute of limitations for a 42 U.S.C. § 1983 action.  Murray sent counsel for the City and Brown a letter explaining why he had filed the lawsuit and then delayed service of the complaint to allow arbitration to be scheduled.  An arbitrator, assigned in December 2009, proposed 24–25 dates from the time he was assigned until June 24, 2011, but no arbitration was scheduled. Murray eventually served the complaint, and the City and Brown filed a motion to dismiss that became ripe for review on May 13, 2011.

Once Murray learned, on June 23, 2011, that the City and the FOP had purportedly entered into a settlement agreement in July 2010, however, he filed a motion for sanctions, an amended motion for sanctions, and an amended complaint.  (Doc. 22, 26, 27.)  In his amended motion for sanctions, Murray contends that the City and the FOP either reached an agreement in July 2010 and failed to give him notice of the resolution until September 29, 2011, perpetuating a fraud against him, or did not reach an agreement until shortly before September 29, 2011, perpetuating a fraud against the Court.  (Doc. 47 at 2–3.)  Plaintiff relies on the facts that Defendants' initial motion to dismiss does not rely on or reference the purported settlement agreement and on a FOP Bi-Weekly Grievance/Discipline Report, which provides a chronological record and synopsis of grievances, but does not indicate that a settlement was reached as of December 2010.

In an April 5, 2012 Order, the Magistrate Judge denied Plaintiff's amended motion for sanctions, reasoning that "despite any lack of explanation on the part of the defendants

[regarding the settlement agreement], plaintiff has not provided sufficient evidence to demonstrate that a [sanctionable] fraud on the Court had been committed" and "[w]hile I do not understand why defendants' counsel was unaware of the settlement of the grievance until after the preliminary pretrial conference, her lack of knowledge is not a ground for actions.  Plaintiff did ultimately receive the information he needed."  (Doc. 47 at 6–7.)

After having participated in a telephone status and scheduling conference with the Magistrate Judge in this case on January 18, 2012, the Magistrate Judge granted Plaintiff leave to file his amended complaint, which had previously been filed on December 20, 2011.  (Doc. 32.) The Magistrate Judge also set new dates by which the parties were to brief Defendants' motions to dismiss.  (*Id.*)  This Court mooted the City and Brown's previous motion to dismiss thereafter. (Doc. 33.)

Before the new motions to dismiss were ripe for review, Murray attempted to file a motion for summary judgment, which was mooted by the Magistrate Judge for the following reasons:

> Plaintiff's memorandum in opposition (doc. 42) to the City's February 17, 2011 motion to dismiss (doc. 35) and his memorandum in opposition (doc. 43) to the FOP's February 17, 2011 motion to dismiss (doc. 36) confusingly also state in their captions that they are motions for summary judgment.  The same brief was filed three time [sic], once as a motion for summary judgment-now moot-and twice as opposition to the defendants' motion to dismiss. . . . Plaintiff's motion for summary judgment has been withdrawn because it presents the same issue that will be placed before the Court in plaintiff's motion to reconsider the April 5, 2012 Order.

(Doc. 51.)  This Court recently denied Plaintiff's motion for reconsideration of the April 5, 2012 Magistrate Order.  (Doc. 65.)

Murray's amended complaint adds the FOP, Gilbert, and John Does #1 through #10 as Defendants in this lawsuit.  (Doc. 27.)  He alleges: (1) violation of Plaintiff's procedural due

process rights secured by the due process clause of the Fourteenth Amendment under 42 U.S.C.

§ 1983 against the City and Brown (Count I); (2) violation of Plaintiff's substantive due process

rights secured by the due process clause of the Fourteenth Amendment under 42 U.S.C. § 1983

against the City and Brown (Count II); (3) violation of Plaintiff's procedural due process rights

secured by the due process clause of the Fourteenth Amendment under 42 U.S.C. § 1983 against

the FOP and Gilbert (Count III); (4) violation of Plaintiff's procedural due process rights secured

by the due process clause of the Fourteenth Amendment under 42 U.S.C. § 1983 against the FOP

and Gilbert (Count IV)[2]; (5) fraud against all Defendants (Count V); (6) civil conspiracy against

the City, Brown, the FOP, and Gilbert (Count VI); and (7) breach of contract "in the alternative"

against the City and FOP (Count VII).  (Am. Compl. ¶¶ 41–95.)

 The City and Brown filed their motion to dismiss pursuant to Federal Rule Civil

Procedure ("FRCP") 12(b)(6), (Doc. 35), and the FOP and Gilbert filed a separate motion to

dismiss pursuant to FRCP 12(b)(1) & (6), (Doc. 36).  Both motions are now ripe for review.  As

noted above, in his oppositions to both motions to dismiss, Plaintiff attempts to also file a

"motion for summary judgment and sanctions on the pleadings."  (Doc. 42, 43.)  This Court will

not consider, in this Opinion and Order, the arguments Plaintiff makes in support of his motion

for summary judgment and sanctions on the pleadings because Plaintiff's amended motion for

sanctions was denied and his motion for summary judgment was mooted.

---

[2] The Court suspects that Plaintiff meant to bring a substantive due process claim in Count IV because Plaintiff
already brings a procedural due process claim against the FOP and Gilbert in Court III, and the allegations in that
count match the allegations in Court II.  The Court will treat Count IV as a substantive due process claim against
FOP and Gilbert, despite the heading in Count IV of the Amendment Complaint.

### III. STANDARD OF REVIEW

*A. FRCP 12(b)(1)*

The burden of proving jurisdiction is on the plaintiff where subject matter jurisdiction is challenged pursuant to FRCP 12(b)(1).  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).  FRCP 12(b)(1) motions to dismiss based upon subject matter jurisdiction "generally come in two varieties: (1) a facial attack on subject matter jurisdiction; and (2) a factual attack on subject matter jurisdiction." *Moore v. Pielech*, Case No. 2:10-cv-00453, 2011 U.S. Dist. LEXIS 97098, at *4 (S.D. Ohio Aug. 30, 2011) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

Facial attacks on subject matter jurisdiction "merely question the sufficiency of the pleading." *Ohio Nat'l Life*, 922 F.2d at 325.  A facial attack on subject matter jurisdiction is reviewed under the same standard as a 12(b)(6) motion to dismiss.  *Id.*  In a factual attack on subject matter jurisdiction a court "must . . . weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.*

The FOP and Gilbert have made a facial attack on subject matter jurisdiction.  The Court, when evaluating the FOP and Gilbert's motion to dismiss, will restrict itself to the face of the pleading, and afford Murray the same protections as it would a party defending against a motion brought under FRCP 12(b)(6).

*B. FRCP 12(b)(6)*

FRCP 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Although a plaintiff need not plead specific facts, the complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff has satisfied Rule 12(b)(6) if he or she pled enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Additionally, the Court must accept as true allegations of fact, and the complaint must be construed in the light most favorable to the party opposing the motion to dismiss. *Davis H. Elliot Co. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975).

## IV. LAW AND ANALYSIS

### A. Murray's § 1983 Claims Against the City and Brown

#### 1. *Monell* Liability

The City argues that Murray's § 1983 claims must be dismissed against it because Murray has failed to identify a City custom or policy and connect that custom or policy to the City, as required under *Monell v. Department of Social Services*. *See* 436 U.S. 658, 694 (1978). In fact, the City argues, it is apparent from the allegations in the Amended Complaint that the City's policy is to provide constitutionally adequate pre- and post-deprivation procedures. Murray retorts that the City urges this Court to read *Monell* too narrowly, as "[i]t is not the custom or policy itself that determines whether a violation occurs, but the execution of the policy or custom that determines liability." (Doc. 42 at 13.) He argues that Brown, as the Public Safety Director, has "final policymaking authority" because he is the final decision-maker in the grievance process. (*Id.*)

In *Monell*, the Supreme Court held that a municipality may be held liable under § 1983 for the unconstitutional acts of its employees if either a municipality's official policy or one of its customs is the source of injury.  436 U.S. at 694.  A plaintiff must demonstrate that the official policy or custom in question is the "moving force" behind the constitutional violation; the existence of an official policy or custom cannot be demonstrated by the occurrence of the alleged constitutional violation itself.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

In order "to satisfy the *Monell* requirements, a plaintiff must identify the policy [or custom], connect the policy to the [government entity] itself and show that the particular injury was incurred because of the execution of that policy."  *Garner v. Memphis Police Dep't.*, 8 F.3d 358, 364 (6th Cir. 1993).  A municipal policy includes "a policy statement, ordinance, regulation, or decision adopted and promulgated."  *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 690).

Allegations related to a single decision by municipal policymakers, such as a decision by an official with final authority, can be sufficient for municipal liability to attach.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–84 (1986).  However, although municipal liability may be imposed for a single act by a policymaker, "municipal liability attaches only where the decision-maker possesses final authority to establish policy with respect to the action ordered."  *Id.* at 481–82.  Alleging one specific incident by municipal employees resulting in a deprivation of rights, however, is generally insufficient; rather, a plaintiff must show the deprivation is a result of deliberate indifference or gross negligence on the part of the officials in charge, or conduct explicitly or implicitly authorized by a decision-maker.  *City of Oklahoma City*, 471 U.S. at 821–24.

Murray does not explicitly identify a City custom or policy, nor does he explain how execution of that policy by Brown violated his constitutional rights. Even if this Court were to assume that the City policy or custom Murray implicates is the execution of the grievance procedure set forth in the CBA, Murray would nevertheless be unsuccessful in stating a *Monell* claim. Murray argues that Brown is the "final policymaking authority" under the CBA. (Doc. 42 at 13.) This characterization, however, is inaccurate. The grievance procedure set forth in the CBA is a result of an agreement between the City and the FOP. Brown is not a policymaker under the CBA, he simply complies with the terms of the CBA. Moreover, Brown does not make the final decision related to a particular grievance. While it is true Brown conducts the pre-termination hearing under step four of the CBA, under step five, "[a]rbitration may only be initiated by the [FOP] upon approval of the Lodge President." (CBA §§ 12.5(D) & (E); Doc. 27-1 at 12–13.) The final decision-maker in the grievance process is the FOP, not Brown.

As explained below, even if Murray had satisfied the *Monell* requirements, his § 1983 claims against the City would nevertheless fail on the merits.

### 2. Procedural Due Process

The City and Brown argue that Murray's assertion that his pre-deprivation hearing was inadequate because Brown was not impartial is unpersuasive. The Sixth Circuit has determined that at the pre-deprivation stage, an employee does not have the right to, and the Constitution does not require, a neutral and impartial decision-maker. Yet, even if the pre-termination hearing was inherently biased, the City and Brown contend, the Sixth Circuit has held that the availability to proceed to arbitration provides an employee with an adequate due process safeguard. (Doc. 35 at 6) (citing *Rhoads v. Bd. Of Educ. Of Mad River Local Sch. Dist.*, 103 F. App'x 888, 897 (6th Cir. 2004)).

9

In response, Murray contends that he has alleged that Brown acted with "calculated intent" and that the outcome of his pre-termination hearing was pre-determined.  (Doc. 42 at 15.)  Murray also argues that he has alleged "the union agreed to arbitrate the decision to terminate his employment, but the City has intentionally delayed proceedings to arbitration in order to further deny Mr. Murray his due process rights."  (*Id.* at 17.)  Because there is a factual dispute as to which party, the City or the FOP, failed to pursue arbitration, Murray argues, the City and Brown's motion to dismiss should be denied and the parties should proceed with discovery.

Murray must plead three elements to establish a procedural due process claim in this § 1983 action: (1) he had a life, liberty, or property interest protected by the due process clause of the Fourteenth Amendment; (2) he was deprived of this protected interest within the meaning of the due process clause; and (3) the City and Brown did not afford him adequate procedural rights prior to depriving him of his protected interest.  *See Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).  The parties here do not dispute that Murray had a property interest in his continued employment as a classified employee pursuant to Ohio Revised Code § 124.11, or that Murray's employment with the City was terminated.  The only element at issue, therefore, is whether Murray was afforded adequate procedural rights related to his termination.

In *Cleveland Bd. of Educ. v. Loudermill*, the Supreme Court held that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before his or her employment is terminated.  470 U.S. 532, 546 (1985).  The requirements of this pre-termination hearing are not extensive; an employee must have the right to hear the reasons for his or her termination and to give his or her "side of the story."  *Id.*  These minimal requirements are meant to strike the proper balance between an employee's property interest and the interests of the

municipality to remove expeditiously the employee.  *Id.*  At the pre-termination stage, an employee does not have a right to a neutral and impartial decision-maker.  *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004).  "It is at the post-deprivation stage where a neutral decision-maker is needed to adjudicate."  *Id.* at 595–96.

In *Duchesne v. Williams*, an employee argued, as Murray argues here, that his procedural due process rights had been violated because his pre-termination hearing was biased.  849 F.2d 1004, 1005 (6th Cir. 1988), *cert. denied*, 489 U.S. 1081 (1989).  The employee's pre-termination hearing was run by the party who had complained about the employee to city council and who ultimately fired the employee.  *Id.*  This Circuit held that even though the decision-maker at the pre-termination hearing had been biased, the employee's due process rights had not been violated because there was a post-termination hearing with opportunity to "ferret out bias, pretext, deception and corruption by the employer in discharging the employee."  *Id.* at 1008.

Murray, relying on *Wagner v. City of Memphis*, argues that his pre-termination hearing was inadequate because it was pre-determined.  *See* 971 F. Supp. 308, 317–18 (W.D. Tenn. 1997) (finding a municipal employees pre-termination hearing had been pre-determined and was a sham).  He argues that by alleging that Brown acted with "calculated intent" to deprive him of due process in his Amended Complaint, he has sufficiently alleged the pre-determined nature of his pre-termination hearing.  Yet, Murray's Amended Complaint is devoid of *any* allegations specifying how his pre-termination hearing was pre-determined.  In fact, he fails even to use the words "pre-determined" in his Amended Complaint.  Thus, Murray's argument is not well-taken.

In light of this Circuit's precedent, therefore, Murray has failed to set forth allegations explaining how his pre-termination hearing violated his procedural due process rights.  As explained above, an employee does not have a right to a neutral and impartial decision-maker at

11

the pre-termination stage. *Farhat*, 370 F.3d at 595. When the pre-termination hearing was in front of a biased decision-maker, however, this Court's focus must shift to the adequacy of the post-termination hearing. *See id.* at 569 ((citations omitted) ("Where there is a system of post-termination procedures available to the employee that includes a neutral decisionmaker and/or arbitration, coupled with a pretermination 'right of reply' hearing, then the employee has received all the process due under the Constitution.").

The plaintiff in *Rhoads* made a claim similar to Murray's claims here. She argued that her pre-termination hearing was inadequate because the person who presided over the hearing was not an impartial decision-maker, and that she was ultimately denied due process because she was barred from pursuing her grievance in arbitration, which was the only procedure available to her for remedying the deficiencies in her pre-termination hearing. 103 F. App'x at 897. The Sixth Circuit found the plaintiff's claim unpersuasive and explained:

> Even if the [pre-termination] hearing was inherently biased against her, the availability of arbitration at Step IV provided [the plaintiff] with an adequate procedural safeguard against such bias. *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983) . . . As the court explained in *Jackson,* "[t]he Union, as the sole and exclusive bargaining representative, had the ultimate power to make a fair and responsible determination as to whether it would invoke the arbitration provision available under the collective bargaining agreement. The right to proceed to arbitration provide[s] [an employee] with an adequate due process safeguard even if the hearing conducted by the [e]mployer earlier had been inherently biased." 721 F.2d at 933. The fact that the Union elected not to pursue arbitration on [the plaintiff's] behalf does not amount to a deprivation of her right to due process by [biased decision-maker]. . . . At most, the Union's decision constituted a breach of the duty of fair representation owed by it to [the plaintiff]. . . . *As such, her recourse for the Union's refusal to pursue arbitration of her grievance was against the Union, not against [the biased decision-maker].*

*Id.* at 897−98 (some internal string citations omitted) (emphasis added). This Court finds the reasoning set forth in *Rhoads* persuasive and applicable to this case. In the CBA, the FOP has the sole discretion as to whether a grievance proceeds to arbitration. (Doc. 27-1 at 13)

("Arbitration may only be initiated by the [FOP] upon approval of the Lodge President."). Murray's recourse is against the FOP in the form of a breach of the duty of fair representation claim, not against the City and Brown in the form of § 1983 claims.

This Court also notes that it finds Murray's attempt to defeat the City and Brown's motion to dismiss by arguing that he alleges the City, rather than the FOP, delayed proceeding to arbitration unpersuasive.  Murray does not make these allegations in his Amended Complaint.  In fact, Murray brings a § 1983 claim for violations of his procedural and substantive due process rights against the FOP in which he alleges: "The Defendants have deprived,  and continue with calculated intent to deprive, the Plaintiff of Due Process to be heard on his termination."  (Am. Compl.¶¶ 65, 74.)

### 3. Substantive Due Process

The City and Brown argue that Murray's substantive due process claim is without merit because termination of employment of tenured public employees does not implicate denial of substantive due process.  Murray concedes that the Sixth Circuit has held termination of public employment does not constitute a denial of substantive due process, but argues that the Circuit has recognized a substantive due process right may be implicated where there is conduct that shocks the conscience.  He argues that conduct that shocks the conscience exists in this case because the City and the FOP conspired against Murray by failing to disclose a settlement agreement, or fabricated lies that a settlement agreement had been reached when it, in fact, had not.

This Circuit has held that termination of public employment does not constitute a denial of substantive due process.  *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992) ("[W]e conclude that plaintiffs' state-created right to tenured employment lacks

substantive due process protection.").  In order for an employee to show dismissal in violation of his or her substantive due process rights, he or she must allege an "invidious reason for [his or her] dismissal, such as race or political beliefs or other status or conduct protected by the Constitution or federal statutes." *McMaster v. Cabinet for Human Res.*, 824 F.2d 518, 523 (6th Cir. 1987) (reversing district court's dismissal of plaintiff's substantive due process claim where plaintiff's termination related to his fundament right of free expression).  An employee's substantive due process rights may be violated "when a public employee is discharged for reasons that shock the conscience." *Id.* at 522.

Murray has failed to set forth any allegations that Defendants' have infringed one of his fundamental rights.  This Court has also already rejected Murray's allegations related to the City and the FOP conspiring against him to lie about the settlement agreement.  Even if this Court had not rejected these arguments, this is not the type conduct that the courts in this Circuit refer to when they refer to reasons for termination that "shock the conscience." *See id.*; *cf. Breithaupt v. Abram*, 352 U.S. 432, 435 (1957) (explaining that conduct that "shocked the conscience" and was so "brutal" and "offensive" that it did not comport with traditional ideas of fair play and decency would violate substantive due process).  In light of *Sutton* and *McMaster*, precedent, Murray's allegations are not enough to state a claim for a substantive due process violation that is plausible on its face. *See Iqbal*, 129 S. Ct. at 1949.

### 4. Defendant Brown

Murray purports to sue Brown in his Amended Complaint "[i]ndividually and in his official capacity."  (Doc. 27.)  Absent from Murray's Amended Complaint, however, are any allegations supporting Murray's attempt to bring this action against Brown in his individual capacity.

14

With respect to Murray's official-capacity suit against Brown, the Supreme Court has explained that these suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690 n. 55 (1978). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law." *Id.* (citing *Graham*, 473 U.S. at 166)).  As explained above, Murray has failed to establish that his Constitutional rights were violated by a City custom or policy, and therefore, his official-capacity suit must also be dismissed.

Even if Murray's Amended Complaint had contained allegations of Brown acting in his individual capacity, in civil damage actions arising out of government officials' performance of discretionary functions, officials are generally entitled to qualified immunity from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).  To evaluate whether qualified immunity applies this Circuit evaluates whether the official violated a constitutional right and whether the impacted right is "clearly established." *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The order of this inquiry is not mandatory, nor does a court need to reach both steps of the analysis.  *Id.*

As set forth above, Murray has not alleged that Brown violated a clearly established constitutional right.  The fact that Brown was not impartial is of no moment as an employee does not have the right to an impartial decision-maker at the pre-termination stage.  *See Farhat*, 370

F.3d at 595.  The fact that Brown extended Murray's investigation past the 90-day period in the CBA is not a constitutional violation; rather, at most, it may constitute a violation of the CBA.

Murray's § 1983 claims against the City and Brown are hereby **DISMISSED**.

*B. Murray's § 1983 Claims Against the FOP and Gilbert*

The FOP and Gilbert make three arguments as to why Plaintiff's § 1983 claims against them for violations of his procedural and substantive due process rights should be dismissed: (1) this Court lacks subject matter jurisdiction over Murray's §1983 claims because he is, in actuality, bringing unfair labor practice claims, and the State Employment Relations Board ("SERB") has exclusive jurisdiction to remedy those claims; (2) the FOP and Gilbert are not state actors; and (3) the § 1983 claims against the FOP and Gilbert are barred by a two year statute of limitations.

Murray was not guaranteed a right to arbitration under the CBA.  The fact that the FOP decided not to arbitrate Plaintiff's grievance does not amount to a deprivation of Murray's due process rights, but rather, may amount to an alleged breach of the duty of fair representation, a claim over which SERB has jurisdiction, not this Court.  *See* Ohio Rev. Code § 4117.11(B)(6) ("It is an unfair labor practice for an employee organization, its agents, or representatives, or public employees to . . . Fail to fairly represent all public employees in a bargaining unit"); Ohio Rev. Code § 4117.12 ("Whoever violates section 4117.11of the Revised Code is guilty of an unfair labor practice remediable by the state employment relations board as specified in this section."); *Zafirau v. Cleveland Mun. Sch. Dist.*, 448 F. App'x 531, 536 (6th Cir. 2011) ("If an appellant believes a grievance was not properly pursued by . . . the Union, that complaint is essentially an allegation of an unfair labor practice pursuant to Ohio Revised Code § 4117.11(B)"); *Shamrock v. Trumbull Cnty. Commrs.*, 593 N.E.2d 28, 30–31 (Ohio Ct. App.

16

1990) ("[A]s acts which constitute unfair labor practices under § 4117 are subject to the exclusive jurisdiction of the State Employment Relations Board ("SERB"), the courts cannot review such claims on primary jurisdiction."); *Rhoads*, 103 F. App'x at 898 ("At most, the Union's decision [not to proceed with arbitration] constituted a breach of the duty of fair representation owed by it to [the plaintiff].").  Murray has a forum in which to bring his breach of the duty of fair representation claim in SERB, not this Court.

In addition, a prima facie case under § 1983 requires: (1) conduct by an individual acting under color of state law; and (2) that this conduct deprived a plaintiff of his or her rights secured by the Constitution or laws of the United States. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984).  Labor unions are generally not state actors. *Johnson v. Intern. Bhd. of Teamsters (Local 830)*, 256 F. App'x 481, 483 (3d. Cir. 2007); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323–24 (2d. Cir. 2002).  When the party is not a state actor, the question that must be answered is whether the union and its officials acted under color of state law, and ultimately, "[whether] the alleged infringement of federal rights is fairly attributable to the state[.]" *Jackson,* 721 at 933.

Plaintiff's Amended Complaint simply contains no allegations that the FOP and Gilbert acted under the color of state law. *See Moore v. Int'l Bhd. of Elec. Workers Local 8*, 76 F. App'x 82, 83 (6th Cir. 2003) (affirming district court's decision that none the defendants, including the International Brotherhood of Electrical Workers union, were state actors for purposes of § 1983). In his opposition to the FOP and Gilbert's motion to dismiss, Murray argues that he has alleged the FOP and City conspired together to deny him due process.  Furthermore, claims of conspiracies between private and state actors, if adequately alleged, generally suffice to establish state action on the part of the private actor for purposes of deciding a motion to dismiss.  (Doc.

43 at 21) (citing *Revis v. Meldrum*, 489 F.3d 273, 292 (6th Cir. 2007)).  Yet, Murray's allegations of conspiracy are not adequately alleged.  The Court is left to guess *how* the City and FOP conspired together. Murray's conspiracy claim states, Defendants conspired together by "agree[ing] to settle the arbitration for eleven months before identifying that such a settlement occurred" and by "purposely[] denying Plaintiff arbitration."  (Am. Compl. ¶¶ 85–86.)  This Court has already rejected Plaintiff's plea for sanctions on these grounds.  These allegations are insufficient to assert the FOP and Gibert acted under the color of state law.

Murray's § 1983 claims against the FOP and Gilbert are **DISMISSED** because this Court lacks subject matter jurisdiction over those claims and he has failed to adequately state a prima facie case under § 1983.  It is unnecessary for this Court to address the FOP and Gilbert's statute of limitations argument.

### C. State Law Claims

When a federal court dismisses claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining claims.  *See* 28 U.S. C. § 1367(c)(3).  "Whether a district court should decide a pendent state-law claim after dismissing all claims over which it had original jurisdiction depends on a balancing of factors that include judicial economy, convenience, fairness, and comity."  *Ferrette v. Cuyahoga Cnty. Bd. of Elections*, 105 F. App'x 722, 727 (6th Cir. 2004) (citations and internal quotations omitted). Dismissal of claims providing original jurisdiction at an early stage weighs strongly in favor of dismissing the remaining state-law claims.  *Musson Theatrical Corp. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.").

18

Murray's state law claims for fraud, civil conspiracy, and breach of contract are closely related to his § 1983 claims, which have all been dismissed.  The parties devote little discussion in their briefs to the state law claims.  Judicial economy and fairness weigh in favor of declining to exercise jurisdiction over these remaining claims.  *See Lusher v. City of Mansfield*, Case No. 1:05CV1754, 2007 U.S. Dist. LEXIS 16772, at *37 (N.D. Ohio Mar. 8, 2007) (explaining that where the "central focus of the briefing was Plaintiff's due process claims" and the "Plaintiff's state-law claims, based in contract law and on a state anti-discrimination statute received far less attention," "resolution of the remaining claims here would *not* substantially serve judicial economy").

This Court declines to exercise jurisdiction over the remaining state law claims.

## V. CONCLUSION

For the foregoing reasons, the City and Brown's motion to dismiss, (Doc. 35) is **GRANTED**, and the FOP and Gilbert's motion to dismiss, (Doc. 36), is **GRANTED**.  This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

 **s/ Algenon L. Marbley**
**Algenon L. Marbley**
**United States District Judge**

**Dated: September 26, 2012**

19